IN RE DAVID COMOLLI.

October Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed February 2, 1906.

*Habeas Corpus—Person "In Execution"—Right of Respondent to Bail Pending Hearing on Exception—V. S. 2027.*

At common law, a person indicted or accused of any felony was bailable upon good surety, until he was convicted.

At common law, in all offences less than felony, the offender is bailable, unless judgment has been rendered against him, or bail is ousted by some special statute.

At common law, no court could bail a person in execution on a judgment following a conviction for any offence; for then imprisonment without bail is part of the sentence and punishment.

V. S. 2027, which provides that when a person is convicted of a bailable offence, and the case is passed to the Supreme Court, a judge of the county court may take bail for the appearance of the respondent before the Supreme Court, and discharge him from commitment, does not *entitle* the respondent to give bail in such cases, but merely authorizes the taking of bail in cases within its purview, if the court in its discretion sees fit to do so.

A person who is in the custody of a sheriff by virtue of an execution issued upon a judgment and sentence following his conviction of simple assault, is "in execution" within the meaning of the provision in our Constitution that "all persons, unless in execution," etc., shall be bailable.

22

On habeas corpus, it appeared that after conviction in county court of
simple assault, judgment, and sentence of imprisonment thereon,
the relator applied to said court to fix bail pending the hearing
on his bill of exceptions, which had been duly signed and filed;
that said court thereupon fixed such bail, and ordered that it be
furnished before a specified time, which was after the final ad-
journment of said court, and in default thereof that mittimus issue;
that bail not having been furnished within the time limited, mit-
timus issued, by virtue of which the relator was taken into custody
by the sheriff of the county; that on the day following the issuing
of the mittimus application was made to the presiding judge of
said court to admit the relator to bail, which application was re-
fused; that thereupon the relator brought habeas corpus, alleging
that he was being restrained by said sheriff without authority.
*Held*, that the relator was not unlawfully imprisoned, and that
he be remanded to the custody of said sheriff.

HABEAS CORPUS, brought to the Supreme Court for the
County of Washington at its October Term, 1905, and then
heard. The opinion states the case.

*John N. Harvey* for the relator.

The respondent was not "in execution," and so was en-
titled to be bailed. Ex parte Lees. E. B. & E. 830; *King* v.
*Waddington,* 1 East 159; 3 Salk 58; *The King* v. *Flower,* 8
T. R. 314; *Rex* v. *Brooks,* 2 T. R. 190; *Corbett* v. *State,* 24
Ga. 391; 2 Hawk. P. C. ch. 15, § 81; *King* v. *Marks,* 3 East
163; *Rex* v. *Reader,* 1 Stra. 531.

The court has power to grant bail till the prisoner is im-
prisoned. *Miller* v. *State,* 15 Fla. 575; *People* v. *Folmsbee,*
60 Barb. 480; Abbott's Law Dict. 461.

*S. Hollister Jackson,* State's Attorney, for the State.

After conviction no constitutional right to bail exists,
for conviction establishes that proof of guilt is evident. 3
Enc. Pl. & Pr. 206; *Yates* v. *People,* 6 Johns. (N. Y.)

335; *People* v. *Lohman,* 2 Barb. (N. Y.) 450; *People* v. *Bowe,* 58 How. Pr. (N. Y. Sup. Ct.) 393; *People* v. *Restell,* 3 How. Pr. (N. Y. Sup. Ct.) 251; 1 Bish. Crim. Pro. §§ 252-254 and 362; Ex parte Dyson, 25 Miss. 356; Ex parte Wray, 30 Miss. 679; Ex parte Ezell, 40 Tex. 451; Hurd, Hab. Cor. 78-90-92; Hallam's Con. Hist. 140.

WATSON, J. At the September Term, 1905, of Washington County Court, the relator was convicted of simple assault, and was sentenced to imprisonment in the house of correction for the term of not less than four years nor more than four and one-half years from the date of commitment, to pay costs of prosecution, and to stand committed until sentence be complied with. Exceptions were taken by the relator and the same were duly drawn, allowed, signed, and filed. On October 14, the day of the final adjournment of the term, the relator applied to the court to fix his bail pending the hearing of the exceptions, whereupon it was ordered that if he furnish bail in the sum of two thousand dollars before nine o'clock in the forenoon of the 18th day of the same month, execution should be stayed, but if he failed so to furnish bail, mittimus should issue. Bail was not furnished within the time specified. A mittimus was thereupon issued, by virtue of which the relator was thenceforth held in custody by the sheriff of the county. On the day following the issuing of the mittimus, application was made to the presiding judge of that court to admit the relator to bail, which application was denied. The relator alleges that he is restrained illegally and without authority of law, and prays that he may be admitted to bail for his appearance before this Court where his case is pending on exceptions.

At common law a person accused or indicted of high treason, or of any felony whatsoever, was bailable upon good

surety until he was convicted. Glanville, 278-281 ; 1 Co. Inst. 189 ; 2 Hale P. C. 129. And it is laid down that regularly in all offences less than felony the offender is bailable, unless (1) he hath had judgment, or (2) that by some particular or special act of parliament bail is ousted. 2 Hale, P. C. 127. In 1 Chitty, Criminal Law, at page 93, it is said : "With respect to the cases in which bail is allowable, it is observable that at common law no justice, or indeed any court, could bail a person in execution on a judgment or conviction for any offence; for then such imprisonment without bail, is part of the sentence and punishment, and this is the existing law. Nor will a court between conviction and judgment, bail the offender without the consent of the prosecutor."

The same author says, page 98, that the Court of King's Bench or any judge thereof in vacation may in their discretion admit persons to bail in all cases whatsoever, and the only exception to their discretionary authority is where the commitment is for contempt, or in execution. In Bacon's Abridgement, Bouvier's ed. tit. Bail in Criminal Cases, it is laid down that neither the Court of the King's Bench nor any other court can bail persons in execution, or punished under any statute with imprisonment for their offence. And that this is one reason why they cannot interfere where a party is committed for contempt.

In *Rex* v. *Wilkes,* 4 Burr. 2527, the defendant was convicted of a criminal misdemeanor in two causes and judgment was duly assigned against him in each cause. Upon his nonappearance a judgment of outlawry was rendered against him. Later, he having surrendered himself to the sheriff upon a *capias utlagatum,* he was brought into court by the sheriff upon the return of a *habeas corpus* directed to him for that purpose. The return showed that the defendant was charged with two outlawries, one on each conviction for the respective

misdemeanors.　Writs of error were allowed in the two causes of outlawry and the defendant was committed to the marshal. His counsel then moved that he might be admitted to bail, and arguments were made on that question.　Mr. Justice Aston (p. 2541) said that after conviction there was no case where it had been held that the defendant had a *right* to be admitted to bail.　Mr. Justice Willes said it was clear that the defendant had no *right* to demand being admitted to bail; that if it should be granted that he was entitled to be bailed upon the *outlawry,* yet as he stood convicted of the crime, he must be committed upon the conviction.　And Lord Mansfield said that he knew of no case where a person convicted of a misdemeanor had been admitted to bail without the consent of the prosecutor.

The relator contends, however, that he is entitled to furnish bail by virtue of section 2027 of Vermont Statutes, which provides that when a person is convicted of a bailable offence in the county court and the case is passed to the Supreme Court, a judge of the county court may take recognizance to the State, with sufficient surety, for the personal appearance of such person before the Supreme Court, to answer for the prosecution, and thereupon direct his discharge from commitment.

It is contended on behalf of the State that this section leaves the matter of allowing bail in cases falling within its provisions, discretionary with the court.　This statute was first enacted as No. 11, of the Acts of 1841.　Adverting to the original act, the provision is that "either judge of the county court in which the trial was had shall have power to take recognizance to the treasurer of the State," etc.　Manifestly the purpose of this statute was only to authorize the taking of bail in cases within its purview if the court in its discretion should grant it.　The language used is not susceptible of a construc-

342 · IN RE COMOLLI. [78

tion which makes it mandatory to admit to bail. The change in the wording was in the revision of 1880, but this effected no change in meaning.

The relator further contends that he is entitled to bail as a matter of right under chapter 2, section 33 of the Constitution, which upon the subject of bail reads: "All prisoners, unless in execution, or committed for capital offences, when the proof is evident or presumption great, shall be bailable by sufficient sureties; nor shall excessive bail be exacted for bailable offences." He argues that since he has not yet been committed to the house of correction, he is not *in execution,* hence is bailable. It is urged on the part of the State that the relator's custody in the hands of the sheriff on the mittimus is a custody *in execution.* Thus the question whether the relator is "in execution" is presented. The meaning of these words is nowhere defined in the Constitution and resort must be had to the common law to ascertain it. In *Rex* v. *Wilkes,* at page 2540, Mr. Justice Yates says: "In a criminal case, if the party be convicted, and a *capias ad satisfaciendum* issues, and he is taken upon it, he is in execution to make satisfaction." And in that case the defendant being in the custody of the marshal on the *capias utlagatum,* it was the opinion of the court, that he was in execution. See opinion of Lord Mansfield, page 2545, and of Yates, J., page 2546, and of Willes, J., 2548; also, Garnon's Case, R. 5 Co. 88. Serjeant Hawkins in speaking of where bail is grantable by the Court of King's Bench to one committed by an inferior court of record, among other things, says: "And as a great regard is always paid to the dignity of the court by which the party is committed, so is it likewise to the notoriety of the offence; and therefore where a person convicted of buying and selling old money, before justices of *oyer* and *terminer,* was committed in execution for the fine, by an order of the court not strictly formal, yet the Court

of King's Bench refused to bail him; for this reason chiefly, because he was in execution, and his commitment was defective only in point of form.    Also where persons taken in execution for their fines to the King, set on them by a sessions of justices of peace, have not only brought their *habeas corpus,* but also their writ of error in the King's Bench, and assigned errors, yet the court has refused to bail them."    2 Hawk. P. C. ch. 15, sec. 77.    The same distinction is made in civil cases.    It is laid down in Blackstone, Book III, p. 415, that when a defendant is once in custody upon the writ of *capias ad satisfaciendum* he is to be kept in close and safe custody; and if he be afterwards seen at large, it is an escape, and the plaintiff may have an action against the sheriff for his whole debt.  · In *Benton* v. *Sutton,* 1 Bos. & Pul. 24, the action was against the sheriff "for the escape of a prisoner in execution."    The prisoner was allowed to be at large before he was committed to jail.    Held to be an escape, and Buller, J., referring to *Hawkins* v. *Plomer,* Black. 1048, said it was pretty well established that there might be an escape whether the party had been committed to jail or not.

Interpreting the Constitution in the light of the common law, there can be no doubt that when the relator was in the custody of the sheriff on the mittimus, he was in execution notwithstanding the final commitment had not been made.

*It is adjudged that the relator is not unlawfully imprisoned, and he is remanded to the custody whence he was taken and his complaint is dismissed.*